UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 21-cr-00028 |
| ) | |
| MICHAEL GREENE ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
Attorney for Defendant

I.  **Introduction**

Comes now Defendant Michael Greene, by and through his counsel of record, Britt Redden, Esq., and William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on July 21, 2023.

Mr. Greene appears for sentencing before this Court having been convicted by a jury of a single misdemeanor count – a violation of 18 U.S.C. Section 1752(a)(1).

The statutory maximum penalty for a conviction under Sec. 1752(a)(1) is up to 1 year imprisonment, and a fine of not more than $100,000.

II.  **Sentencing Guidelines Calculation**

The Guideline Calculation prepared by the Probation Officer in the Final Presentence Report is premised entirely on the use of "acquitted conduct" as "relevant conduct," presumably at the urging of the Government -- no explanation is offered in the PSR for why acquitted conduct has been used to determine the various guideline calculations.

On June 30, 2023, in denying a petition for certiorari in McClinton v. United States, ____ WL ____, Justice Sotomayor noted that a majority of Justices now on the Court have expressed disapproval of the use of acquitted conduct at sentencing, a practice sanctioned by the Court in United States v. Watts, 519 U. S. 148, 170 (1997) (Kennedy, J., dissenting).  "As many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing

Guidelines range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system."

Justice Sotomayor cited past a decision on the subject by the Supreme Court in which Justice Thomas called for an end to the practice, as well as Appeals Court decisions with similar criticisms of the practice authored by Justices Kavanaugh and Gorsuch on the D.C. and Tenth Circuits, respectively.

Justice Kavanaugh wrote separately, joined by Justices Gorsuch and Barrett, noting that the denial of cert. in McClintock was because the United States Sentencing Commission has the issue currently under consideration, and it was appropriate for the Court to wait for the Sentencing Commission's determination before granting certiorari on a case involving the subject.  There was no indication by Justice Kavanaugh that his view on the topic had changed.

The "Offense Conduct" section in the PSR relies entirely on the premise that Mr. Greene was a knowing participant in the criminal conspiracies for which he was charged – but nonetheless acquitted by the jury after a full presentation of the evidence by the Government.  The Offense Conduct and Guideline calculation sections of the PSR would read nearly the same if Mr. Greene had been convicted on each of the counts with which he was charged.

The Probation Officer correctly notes that the applicable Guideline provision is Sec. 2B2.3 -- "Trespass" -- and the Base Offense Level is 4.  Two levels are added because the trespass occurred on "restricted" grounds.

The PSR then follows the cross reference in Sec. 2B2.3(c)(1), based on a finding – which is not explained -- that Mr. Greene's trespass was for the

purpose of committing another felony.  The PSR claims that other felony was the crime of obstructing an official proceeding in violation of 18 U.S.C. Sec. 1512(c)(1) – the charge in Count Two of the indictment on which the jury did not reach a verdict and the government decided to not seek to retry.

Using the cross-reference and adopting factual findings in the same manner as if Mr. Green was convicted on Count Two, the Probation Officer ultimately ends up with an Adjusted Offense Level of 29, and determines the recommended Guideline Range to be 87--108 months.

Not following the cross-reference which is not supported by the trial evidence or relevant conduct, the Adjusted Offense Level is 6.  With a Criminal History Category I, the recommended Guideline Range is 0-6 months.

### III.  **The Offense Conduct.**

Mr. Greene went to the U.S. Capitol grounds during the morning of January 6, 2021, to evaluate and prepare for the task of providing site and speaker security for planned and permitted protest speeches later that same afternoon.  He had been there on the afternoon of January 5 to oversee similar security operations performed by members of the Oath Keepers from Florida, all of which came off without incident just as planned.

The events of the days and weeks leading up to January 6 are well known to this Court.  Mr. Greene testified to his own involvement in two different trials.  Not being a member of the Oath Keepers, and only being present with Stewart Rhodes, Kellye SoRelle, and other Oath Keepers when he

paid to do so, Mr. Greene offered a more detached view of the Oath Keepers as an organization, and of the individual members thereof whom he knew.

By virtue of his military service and more than a decade of training and work history with the very best personal and site security companies in the world, Mr. Greene had a skill set that Stewart Rhodes coveted.  Mr. Greene's initial distrust of the Oath Keepers, thinking they were a white supremacist organization, was overcome by an endorsement of a close friend – also African American – in the Indianapolis law enforcement community.  Based on that endorsement, Mr. Greene agreed to work for the Oath Keepers as an independent contractor.  Initially his role was merely to serve as a personal bodyguard for Ms. SoRelle in circumstances where her safety might be compromised by protest and counter-protest activities.  That role later developed into further involvement in "personal security detail" operations that Rhodes viewed as a path to elevate the profile of the organization – for purposes of self-promotion and Rhodes' financial benefit through increased membership.

The evolution of Mr. Greene's involvement is a matter of record.  He worked as a personal bodyguard for Ms. SoRelle in Detroit shortly after the election.  He worked for the Oath Keepers in both Louisville and Atlanta.  He worked as a bodyguard again at the Million Maga March in Washington D.C. on November 14, 2020, remaining close to Rhodes and SoRell for that purpose.

He had no plans to attend the January 6 event until Don Siekerman fell ill in the days leading up to the rally and protest.  He had consulted on the security plan with Mr. Seikerman so he was able to take over that role with little disruption.  He changed some aspects of the plan, but not all his changes

were put into place between the time he took over and the time he arrived to lead the security work.  He was the "overall ground leader."  But he was the leader of the security plan he developed, and that involved three personal security groups – one for Roger Stone, one for Ali Alexander, and one for unnamed Florida Congressmen who were expected to march with the crowd from the rally at the Ellipse to the Capitol.

    Mr. Greene traveled by car from Indiana to Washington D.C. with two companions.  He stayed at the Vienna Holiday Inn in a room reserved for him by Stewart Rhodes.  After his arrival he accompanied the security detail to the Capitol in the afternoon and evening of January 5.  He spent time evaluating the locations for activities set to take place on January 6.

    During most of the day on January 6 he was not in the company of other members of the Oath Keepers – he was with the two individuals he traveled with.  The Government's narrative about what he did and why, and/or who he communicated with and what about, has always been largely supposition.  The Government adopted assumptions about those contacts that advanced the Government's narrative against the organization even when it had no evidence upon which to base such assumptions.

    The Government relied on messaging sent by and between others, and assumptions that Mr. Greene must have read all those messages and agreed with them since he was involved in the chat groups.  Based on the fact that he showed up to work as part of the planned Oath Keeper activities on January 5-6, the Government assumed he was in agreement with the plans supposedly formed by others in the days and weeks leading up to January 6.

Maybe rational assumptions – but assumptions nonetheless.

One area where the evidence is consistent on both sides is that Mr. Greene testified that he never told anyone to go inside the Capitol, and Joshua James said the ONLY instruction he received from Mr. Greene at any point during the day was simply to come to the Capitol sometime around 2:00 p.m. Mr. James told the Government in multiple interviews that the next time he spoke with Mr. Greene was after he had exited the Capitol with other members from the second Oath Keeper group to go inside. Mr. James told the Government that he – Joshua James – made the decision to lead the second group to the Capitol building and inside after arriving on the Capitol grounds just before 3:00 pm.

No one testified that Mr. Greene gave any directions or instructions for any member of the Oath Keepers to enter the Capitol building.

Mr. Greene testified he had several calls from Joshua James during the morning on January 6 for the purpose of James keeping Greene informed as to the status of Roger Stone and the Oath Keeper personal security detail for Mr. Stone. But Mr. Greene testified that all efforts to make phone contact with Mr. James during the afternoon on January 6 were unsuccessful. Mr. James confirmed that to be the case.

Even on the question of "relevant conduct", the state of the record is such that it falls far short of any preponderance with regard to Mr. Greene's knowing and intentional participation in the charged conspiracies, as well as with respect to the substantive Sec. 1512(c)(1) offense charged against him. As noted at trial, the "messages" sent by Greene on the afternoon of January 6

that the Government relied on at trial were messages sent before any Oath Keepers arrived at the Capitol. Greene's messages described what he was watching as the crowd grew and eventually overran the exterior defenses of the Capitol building. He was communicating with non-Oath Keeper friends who were watching events on television or social media. He didn't make substantive contact or meet with any member of the Oath Keepers in person until after both groups had entered and exited the Capitol building on the East Side – the opposite side from where he was located while watching events unfold.

Mr. Greene stood among the crowd on the West Side of the Capitol and took pictures. Efforts to communicate with members of the Oath Keepers were almost entirely unsuccessful. When asked why he didn't leave on cross-examination, his answer was the simplest and most obvious – "When would I ever see that happen again?"

### IV. Sentencing Factors Under Sec. 3553(a)

The PSR captures accurately Mr. Greene's biographical information, as well as his professional and family history before January 6, 2021. The Court knows the facts of this case, as well as the factual circumstances pertinent to Mr. Greene's background and personal characteristics.

Mr. Greene is the proverbial "square peg" that the Government has attempted to pound into the "round hole" that was its offense narrative regarding the Oath Keepers and January 6. The evidentiary shortcomings and inferential leaps across those shortcomings simply became insurmountable when Mr. Greene's involvement was considered.

Questions remain as to whether Mr. Greene would have ever been indicted had it not been for the fact that he agreed to testify on behalf of Rhodes and other members of the Oath Keepers only 3 months ahead of the start of the first trial. The Government can presumably produce a timeline of activities that will establish "good faith" on its part with regard to the timing of its decision to seek Mr. Greene's indictment.

But it cannot escape – and the Court should not overlook – the fact that the Government had Mr. Rhodes' cell phone with all hundreds of thousands of Signal messages in May 2021; Mr. Greene was interviewed shortly thereafter and gave information consistent with his testimony; the government received Mr. Greene's telephone in the late summer of 2021; and it wasn't until June of 2022 that Mr. Greene was first indicted – just days after agreeing to testify as a defense witness in the September 2022 trial.

Mr. Greene stands before this Court convicted of an "A" misdemeanor. He was acquitted of three felonies, and the jury was unable to reach a verdict on a fourth felony. Rather than risk the embarrassment of losing that fourth felony in a retrial, the Government has opted to dismiss that count.

This Court, as a matter of justice and fairness, should treat Mr. Greene no different than other misdemeanants related to January 6. He was in a place he was not lawfully entitled to be at a time when the Capitol ground were restricted.

He has no prior criminal record. He has served his country as a member of the active duty military with distinction and honor. He has suffered significantly in terms of his employment by the stigma associated merely with

having been charged. There is no guarantee that he will be able to resume in his chosen profession notwithstanding nearly two decades of exemplary service – often for the Department of Defense or other Departments and Agencies of the Federal Government. He has been largely unemployable in his profession for over a year, and will now have to alter his career plans in order to support his family.

A sentence of probation is a reasonable response to address the nature of the criminal conduct as found by the jury. Anything beyond that is not only unnecessary to advance the public policy interests set forth in Sec. 3553(a), it unjustly awards the Government for its wrong-headed pursuit of Mr. Greene when the Government's own evidence strongly suggested the case it chose to pursue against him was factually erroneous.

## DEFENDANT'S SENTENCING RECOMMENDATION

Michael Greene is a professional security officer with a lengthy history of service to his country as a professional soldier both on active duty and as a contractor. He worked with the leaders of the Oath Keeper organization in a professional capacity as a security expert and was paid for such work.

He had no interest in politics generally and had no interest specifically in the politics of Stewart Rhodes or others with regard to the 2020 Presidential election that brough members of the Oath Keepers to the Capitol on January 6. The Government might not believe that to be true but that was Mr. Greene's

testimony and there has been no evidence to the contrary offered by the Government.

He testified under oath and subjected himself to cross-examination not once but twice. The jury reacted to the Government's evidence and Mr. Greene's testimony by rejecting the Government's demand that he be found guilty on felony charges.

The jury found criminal fault in his conduct – but only for having remained on the Capitol grounds when the circumstances were such that he should have left.

He never entered the Capitol building. There was NO evidence presented at trial that Mr. Greene knew of or understood the nature of the congressional proceedings taking place inside starting at 1:00 p.m. The jury rejected the Government's claims that he joined in any conspiratorial agreements with others as alleged in the indictment.

Based on a totality of the factors set forth in Section 3553(a), a sentence of probation accurately reflects the facts as they relate specifically to Mr. Greene and his conduct on January 6, 2021.

Date: July 11, 2023                                             Respectfully Submitted,

                                                                /s/ William L. Shipley
                                                                William L. Shipley
                                                                PO Box 745
                                                                Kailua, Hawaii 96734
                                                                Tel: (808) 228-1341
                                                                Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*